[Civ. No. 9110.   Third Dist.   July 24, 1957.]

SIBYL HANDLEY, Respondent, v. THE CAPITAL COMPANY (a Corporation) et al., Defendants; AMERICAN BUILDING AND MAINTENANCE COMPANY (a Corporation), Appellant.

Gant & Gant and Nernon F. Gant for Appellant.

Treadwell & Kane and Thomas J. Kane, Jr., for Respondent.

WARNE, J. pro tem.*— This is an appeal by defendant American Building and Maintenance Company, a corporation, from a judgment entered upon a jury's verdict in favor of the plaintiff-respondent in an action for damages for personal injuries sustained when respondent slipped and fell on a waxed floor in a building for which appellant furnished janitorial service. The Capital Company, a corporation, and Bank of America National Trust and Savings Association, a corporation, were joined as codefendants but were dismissed from the action prior to the trial.

On Friday afternoon, August 20, 1954, as respondent, Sibyl Handley, accompanied by her sister, was walking from a doctor's office toward the elevator on the second floor of the Bank of America building in Merced, respondent's right foot slipped backward and she fell "quite hard" on her left side, hitting her hip and elbow. After she got up both respondent and her sister observed an arched skidmark 2½ to 3 feet long and ¾ inches wide on the floor. Respondent was wearing oxfords having a 1½ inch heel and the mark appeared to have been made by the heel of her shoe. After respondent's fall, there was a sticky, dirty substance on the right lower front and left lower back of her dress. The substance was not on the garment before she fell. Immediately thereafter re-

*Assigned by Chairman of Judicial Council.

spondent reported her fall to a bank teller who suggested that she see a Dr. Parker in the building. At that time she was feeling very ill. The following Monday a Dr. Hicks, respondent's family doctor, examined her. She complained of nausea and of pain and tenderness in her back, shoulder and hip. Dr. Hicks determined that respondent had a severe sprain and strain of the muscles of her back, an over-pulling and bruising of muscles that run up and down on either side of her spine in the area of the lower portion of her back and pelvis and in the region around her shoulders. He put a light-weight type support on her shoulder and back to prevent pain and put the muscles at rest. He saw respondent 35 or 40 times in connection with his treatment of her, which consisted of massages, heat treatments and a muscle relaxing drug. Respondent's nausea subsided in several days and the pelvic pain subsided in a matter of weeks. Dr. Hicks concluded that respondent suffered from a muscle spasm in the regions of the shoulders and neck which she still had at the time of the trial. In his opinion, she would have intermittent episodes of muscle trouble for a long time with the probability of its being permanent. At the time of the trial on January 17, 1956, 17 months later, respondent was still under Dr. Hicks' care and treatment, had pain in her back and shoulders and was wearing the support.

A chemist testified as an expert and stated that from stained patches cut from the left lower back and the right lower front of the dress respondent was wearing when she fell, he extracted with ethyl ether a substance which he concluded was a hard Carnuaba wax which is used in water emulsion floor waxes. In a patch having no stain on it he extracted no wax. The fact that the stains extended all the way through the material indicated to him that the wax was in a liquid state when it came in contact with the garment.

The witness Merriman testified that on the day respondent fell and for three years prior thereto he was employed by appellant to do janitorial work in the hall of the second floor of this building. He dry-mopped the halls nightly and wet-mopped and waxed them every two weeks on Monday morning between 1 and 8 a. m. The wax was furnished in 5-gallon cans by appellant and Merriman waxed the halls at appellant's direction. He applied the wax with a mop, waited a couple of hours for it to dry and then buffed it. He had previously given a statement that he waxed this floor every four weeks and said that he was told to do so by his im-

mediate superior: Another employee of appellant's waxed the floors in the offices on the second floor. Appellant's supervisor testified that, at that time, appellant used in the building an emulsion wax with Ludox which was a thin liquid.

The appellant contends that the complaint states no cause of action against it and that its demurrer on that ground was improperly overruled.

The complaint alleges that the defendants Capital Company and Bank of America National Trust and Savings Association were the owners of the building at the time of the accident; that at all times mentioned therein defendant American Building and Maintenance Company, a corporation, was an employee of the owners and acted as such in the course and scope of its employment; that at the time of the accident defendants, and each of them, maintained the corridor of the second floor of the building in a defective, dangerous and unsafe condition; that at the time of the accident plaintiff was walking on said corridor after visiting a tenant of the owners and was lawfully an invitee on said premises when, due to the unsafe, dangerous and defective condition of the floor of the corridor plaintiff (respondent) was caused to slip and fall; and that "as a direct and proximate result of the negligence of the defendants, and each of them, and of plaintiff's slipping and falling," plaintiff was injured. To this complaint appellant demurred generally on the ground that it failed to state a cause of action.

"Negligence may be alleged in general terms. It is sufficient if the complaint discloses a duty on the part of the defendant to reasonably protect the plaintiff against the danger and injury complained of, his failure to do so and that the injuries were sustained as a result of that omission.

It is not proper to allege evidentiary matters. All that is required of the plaintiff, even as against a special demurrer, is to allege in the complaint the essential facts with such particularity and definiteness as to inform the defendant of the relationship of the parties and the nature of the cause which would create his liability for negligence. [Citations.]" (*Miller* v. *Pacific Constructors, Inc.,* 68 Cal.App.2d 529, 539 [157 P.2d 57].)

The complaint in the instant case states a cause of action for damages for negligent injury to the respondent. The demurrer was properly overruled. The element of appellant's legal duty of care toward respondent is shown by the allegation that appellant was an employee of the owners

and acted as such in the course and scope of its employment (though the case was not tried on this theory) and that the respondent was an invitee of a tenant of this building. The element of appellant's breach of duty is shown by the allegation that appellant maintained the corridor in a defective, dangerous and unsafe condition, whereby respondent was caused to slip and fall.

Appellant urges that since it was not the owner or lessee of the building, it owed respondent no duty to maintain the floor in a safe condition. We do not agree with appellant. At the trial it was stipulated by the parties that appellant had a contract with the owner and had agreed thereby to furnish janitorial service for the building under the provision that "all halls to be swept nightly and wet-mopped weekly and scrubbed as required." The case was tried on the theory that appellant was an independent contractor. Both parties concede such to be the relationship of the parties. It does not follow from the mere fact that appellant was an independent contractor that it may not be liable when its own negligence created the dangerous condition which was the proximate cause of respondent's injury. ■ As stated in *Hall* v. *Barber Door Co.*, 218 Cal. 412, 419 [28 P.2d 279]:

"It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by him or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected by the performance of the work. [Citations.] Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damage directly attributable to the failure to perform this duty. (*Oregon-Washington Ry. & Nav. Co.* v. *Branham*, 259 Fed. 555; *Cummings* v. *C. W. Noble Co.*, 143 Wis. 175 [126 N.W. 664]; *Gardner* v. *Smith*, 7 Mich. 410 [74 Am.Dec. 722].)"

■ Here appellant undertook to wax the floor, employing its own means and its own agents under a continuing contract. There is no showing that the work was completed and accepted nor is any such claim made by appellant. Under such circumstances appellant was liable for any negligent injury to plaintiff regardless of the question whether the owner of the building may be also liable. (*Knell* v. *Morris*, 39 Cal.2d 450, 455 [247 P.2d 352]; *Bowater* v. *Tassey*, 81 Cal.App.2d 651, 654 [184 P.2d 931]; 26 Cal.Jur.2d 418, § 23; 38 A.L.R. 403, Annotation; Rest. Torts, p. 1032, § 385, Comment c.)

■ Appellant contends next that the evidence was insufficient to show any negligence on its part. While the evidence is rather weak, we feel that it is sufficient to sustain the implied finding by the jury that appellant was negligent. The fact that the wax stains found on respondent's garment as a result of her fall extended all the way through the material indicates that liquid wax had been placed or spilled on the floor and had not been mopped up or buffed at the time of the accident. Appellant used on the floor an emulsion wax with Ludox which was a thin liquid. The chemist testified that the substance he extracted from respondent's dress was a hard Carnuaba wax which was used in water emulsion floor waxes. The witness Merriman, as heretofore noted, testified that he applied wax furnished by appellant every two weeks on Monday morning, and that he dry-mopped the floors every night. It may be reasonably inferred that he did not dry-mop this area of the floor as stated between the last application of wax, or that wax was either spilled on the floor, or applied without the proper buffing treatment following the dry-mopping the night prior to the date of the accident. The evidence further discloses that another employee of appellant's waxed the floors of the rooms off the hallway. However, there is no evidence when this job was done. There is also evidence that Merriman was told by his immediate superior to state that he waxed this floor every four weeks. We may ask, just why should such a request have been made of Merriman if the appellant was not in some manner negligent. From the facts as disclosed by the record, the jury could infer that liquid wax on the floor was the proximate cause of respondent's fall and that such wax was there as a result of appellant's negligence in the performance of its duties to sweep and mop the floor.

■ Appellant contends that the court erred in denying its

motion for a nonsuit at the close of respondent's case. If all the evidence given at the trial by both sides sufficiently supports the verdict the order denying the motion for nonsuit will not be disturbed. (*Lowe* v. *San Francisco etc. Ry. Co.*, 154 Cal. 573, 576 [98 P. 678].)

█ Lastly, appellant contends that respondent's injuries were negligible and that the award in the sum of $2,500 was excessive. No authorities are cited in support of this contention. The record discloses that the medical testimony regarding the nature and extent of respondent's injuries was conflicting. We are of the opinion that a verdict of $2,500 cannot be said to be excessive or the result of passion and prejudice on the part of the jury in view of the injuries sustained by respondent and the suffering involved. The award is supported by Dr. Hicks' conclusion that respondent suffered a severe sprain or strain of the muscles in the regions of the shoulders and neck when she fell on August 20, 1954; that she still had a muscle spasm in those regions at the time of the trial on January 17, 1956; and that she would have intermittent episodes of muscle trouble for a long time with the probability of its being permanent. (*Daggett* v. *Atchison, T. & S. F. Ry. Co.*, 48 Cal.2d 655, 666 [313 P.2d 557]; *Freeman* v. *Nickerson*, 77 Cal.App.2d 40, 51 [174 P.2d 688], and cases cited therein.)

The judgment is affirmed.

Van Dyke, P. J., and Schottky, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 18, 1957.