[Civ. No. 26634. Second Dist., Div. Three. Jan. 22, 1964.]

MARGUERITE POULSEN, Plaintiff and Appellant, v. WILFRED CHARLTON et al., Defendants and Respondents.

HAROLD POULSEN, Plaintiff and Appellant, v. WILFRED CHARLTON et al., Defendants and Respondents.

(Consolidated Cases.)

Aidlin, Martin & Mamakos and Bonnie Lee Martin for Plaintiffs and Appellants.

Johnson & Johnson, George R. Johnson, Spray, Gould & Bowers, Daniel O. Howard and Cushman & Grover for Defendants and Respondents.

SHINN, P. J.—This is an action for property damage arising from the flooding by rain water of a bridal gown shop and photography studio. Separate actions were brought by the plaintiffs Marguerite Poulsen and Harold Poulsen, the

tenants, against the landlords, Wilfred and Dorothy Charlton, a general contractor, W. H. Crawford,[1] and a subcontractor, J.G. Meadows Roofing Company. The actions were consolidated and only the issue of liability was tried. At the close of the plaintiffs' case each defendant made a motion for judgment which was denied. Defendants Meadows and Crawford then rested without offering any evidence, again moved for judgment, which was granted. Defendants Charlton introduced evidence, after which judgment was entered in their favor. Plaintiffs appeal from this judgment.

The facts are substantially undisputed. Plaintiff Marguerite Poulsen was a dress designer and owned a specialty shop for bridal gowns and formals. Plaintiff Harold Poulsen operated a photography salon in conjunction with the bridal shop. The premises had been under lease from the Charltons for four or five years.

Wilfred Charlton determined that in order to comply with the Long Beach Municipal Building Code he would have to have certain work done on the roof of the building occupied by the Poulsens. An engineer was hired to draw the necessary plans, and Crawford was engaged as the general contractor to make the necessary improvement and alterations. Meadows Roofing Company was engaged by Crawford and agreed to do the roofing. In the course of the work part of the roof had to be removed in order to reinforce the structure, exposing the interior of building to the elements. Before a permanent roof could be installed a rain occurred, flooding the plaintiffs' shop, causing substantial damage to merchandise and fixtures and interrupting business.

The work was scheduled to be completed in five days, starting on a Monday and finishing on Friday. On Monday morning, February 22, when Crawford's crew arrived to start work, they found they had no place to park their equipment. The existence of the problem was discovered by Crawford on

---

[1]This case was originally tried before a jury and resulted in a mistrial. Since that trial the defendant Crawford has died, and a supplemental complaint was filed naming the executor of Crawford's will. Counsel for Crawford admitted that Crawford was insured and that the insurance company had undertaken the defense in the first trial, and that they would now represent the executor. The court ordered the record to show that counsel was now representing the executor of the estate instead of the individual. For convenience the executor of the Crawford estate shall simply be referred to as ''Crawford.'' The testimony of Crawford from the first trial was introduced by plaintiffs as an exhibit.

Monday and it then took nearly the entire day to make parking arrangements with System Auto Park and obtain certain necessary insurance. This delayed Crawford's work so that the roof could not be installed until Friday of that week.

The court found that on Friday ''the roof on said building had not been replaced and a possibility of rain was predicted. Defendant Wilfred Charlton warned said W. H. Crawford that there was a possibility of rain, and said W. H. Crawford assured defendant Charlton that the building and its contents would be adequately protected against rain. On February 26, 1960 [Friday], in response to the call of said W. H. Crawford, Defendant J. G. Meadows sent his employees to the job; they did certain work on the roof which was temporary and was understood by said W. H. Crawford to be temporary in nature.'' And that on Saturday ''said W. H. Crawford called upon defendant J. G. Meadows to complete the roof, but the latter failed to do so, saying he could not get a crew; whereupon said W. H. Crawford's employees attempted to put a temporary roof on the building, to protect it from the threatened rain.'' These findings are supported by the evidence. On Sunday there was substantial rain which caused the damage.

There was no doubt that Crawford and Meadows were aware of the impending rain and the unfinished condition of the roof. On Saturday it was cloudy and overcast. Charlton had called Crawford about the impending rain, and Crawford testified that as early as Friday he had heard a weather report that there was an approaching storm.

The Poulsens were at no time informed by either the Charltons or Crawford that the roof had been removed, exposing the interior of the building to rain, nor were they informed on Friday or Saturday that there was any danger from the impending rain. Apparently Crawford himself did not consider there was any danger. He testified that ''I thought the roof [temporary roof] was sufficient to hold, according to what my foreman told me. He did the best he could and they thought it would hold all right for a normal rain.''

There seems to have been a question whether a clogged downspout caused or contributed to the flooding. The only evidence offered on this point was that of Crawford, in which he testified that he believed the temporary roof ''would have held if the down-spout had not been clogged to the elbow.'' There was also doubt as to what, if anything, clogged the downspout. Crawford testified that it was his responsibility

to cover the drain while work was in progress to prevent material from dropping into it, that he had been told by his foreman that the drain had been covered prior to starting work, and the cover removed after completion of the work. There was no finding as to what caused the temporary roof to leak. There was also an emergency overflow hole. Earlier that month and the preceding month there had been substantial rainfall with no apparent leaks in the roof. This would indicate that if a complete roof had been put on there would not have been any leakage.

The court failed to find whether there was negligence upon the part of any or all defendants. Plaintiffs contended that either or both codefendants Crawford and Meadows were negligent, and that defendants Charlton were liable under the doctrine of respondeat superior. They also contended that the doctrine of res ipsa loquitur applied. The trial court stated ''I can't see that there is any proof of negligence in this case. The only argument that has been made is the reliance on the doctrine of res ipsa loquitur, and I can't see that it applies.'' The court found ''There was no proof that any of the defendants, or all of them, proximately caused, jointly or severally, any damage to the property of the plaintiffs.''

The primary issue on the appeal is whether the court correctly refused to apply that doctrine. We have concluded that it erred in this respect.

The prerequisites for application of the doctrine were set forth in *Rodin* v. *American Can Co.*, 133 Cal.App.2d 524, 529 [284 P.2d 530], where the court said that ''The conditions under which res ipsa loquitur applies are: (a) 'There is a basis of experience, either common to the community or brought out in evidence, from which it may reasonably be concluded that the accident is of a kind which does not ordinarily occur unless someone has been negligent.' (b) 'It must be caused by an agency or instrumentality within the exclusive control of the defendant.' ... (c) 'It must not have been due to any voluntary action or contribution on the part of the plaintiff.' (Prosser, 37 Cal.L.Rev. 233; Prosser on Torts, p. 295; *Ybarra* v. *Spangard*, 25 Cal.2d 486, 489 [154 P.2d 687, 162 A.L.R. 1258].)''

Patently the plaintiffs did not cause their own damage. They exercised no control over the roof, did not participate in its remodeling, or in any way contribute to the ultimate condition which caused it to leak.

It is also clear that there was exclusive control over the roof in the three defendants. ■ It is well settled that the exclusive control required by the doctrine of res ipsa loquitur is not the exclusive control of any one defendant. All that is necessary is that the plaintiff eliminate the probability that the accident was caused by someone other than the defendants. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 443 [247 P.2d 344].) · ■ Thus, where the plaintiff sues only one of the parties who might have caused the injury res ipsa loquitur cannot be relied upon. (*Gerber* v. *Faber*, 54 Cal. App.2d 674 [129 P.2d 485].) But where all of the parties who exercised control over the instrumentality which caused the injury are sued together, the doctrine may be used, and the defendants called upon to explain how the injury came about. (*Rodin* v. *American Can Co.*, supra, 133 Cal.App.2d 524, 530; *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 767 [185 P.2d 94]; *Ybarra* v. *Spangard*, supra, 25 Cal.2d 486, 491, 493.)

■ The Charltons had a duty to the plaintiffs because they were the owners of the property and had retained possession and control over the roof. ■ They had the responsibility to use reasonable care in the maintenance and repair of the roof, and would be liable for any damages proximately resulting to their tenants from their negligence. (*Janofsky* v. *Garland*, 42 Cal.App.2d 655, 657 [109 P.2d 750].) In *Columbia Laboratories, Inc.* v. *California Beauty etc. Co.*, 24 Cal.2d 114, 117-118 [148 P.2d 15], the court said that a landlord was liable to a tenant for negligence in maintaining and repairing those " 'portions of the premises of which the lessor retains possession and control.' " There a landlord was held liable for damaged merchandise of a tenant where a fire had destroyed part of the roof and afterwards the landlord had put down a temporary tarp which proved inadequate and leaked during a rain.

■ Nor can the landlord delegate his responsibility for the use of due care in the repairing of property over which he retains control and has a duty to repair. If the contractors in the instant case were negligent the Charltons remain liable for their negligence. (*Longway* v. *McCall*, 181 Cal.App.2d 723, 731 [5 Cal.Rptr. 818]; *Bowater* v. *Tassey*, 81 Cal.App.2d 651, 654 [184 P.2d 931]; *Dow* v. *Holly Manufacturing Co.*, 49 Cal.2d 720, 725 [321 P.2d 736].) Therefore, even while the work was in progress the Charltons retained control over the roof jointly with the contractor.

Contractors, of course, are responsible for their own negligence which causes injury to an occupant of a building upon which they are working. (*Donahoo* v. *Kress House Moving Corp.*, 25 Cal.2d 237, 244-245 [153 P.2d 349]; *Chance* v. *Lawry's Inc.*, 58 Cal.2d 368, 376 [24 Cal.Rptr. 209, 374 P.2d 185]; *Handley* v. *Capital Co.*, 152 Cal.App.2d 758, 763 [313 P.2d 918].) Crawford was the general contractor and had control over the roof while the work was being done. He was primarily responsible for the safe completion of the remodeling and alterations.

Even conceding, as respondent Crawford contends, that the only evidence introduced as to the cause of the leak was the opinion of Crawford that it was due to the clogged downspout, and that the only evidence offered as to the actions of Crawford with regard to the downspout was his testimony that he had acted in a careful and prudent manner in seeing that the opening was protected at all times while his men were working on the roof, still the court did not have to accept this evidence.

If the court had applied res ipsa loquitur, as it should have done, the doctrine, itself, would have been evidence, providing an inference of negligence which the defendants would have had to balance or overcome. (*Burr* v. *Sherwin Williams Co.*, 42 Cal.2d 682, 688-691 [268 P.2d 1041].) Whether the inference has actually been overcome is a question of fact, but this cannot be reached and determined until the court has determined that the facts give rise to the inference of negligence. (*Danner* v. *Atkins*, 47 Cal.2d 327, 331 [303 P.2d 724]; *Burr* v. *Sherwin Williams Co., supra*, 42 Cal.2d 682.)

Respondent Meadows contends that there was no evidence that he was under any duty or that he had any control over the roof. This contention is incorrect. He had contracted to do the roofing for the building, and had actually been up on the roof and done work on both Thursday and Friday. Had he been able to obtain a crew on Saturday he would have returned. He had participated in the repair of the roof and at some point during the course of events leading to the plaintiffs' injury had had control over the roof jointly with Crawford and the Charltons. It was his responsibility to show that he was not negligent. (*Ybarra* v. *Spangard, supra*, 25 Cal.2d 486.) A finding upon this issue was required.

The final question is whether this was the type of accident

which does not ordinarily happen in the absence of negligence by someone. In *Di Mare* v. *Cresci*, 58 Cal.2d 292, 298-299 [23 Cal.Rptr. 772, 373 P.2d 860], the court said: "The doctrine of res ipsa loquitur is applicable where the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the one responsible. (*Faulk* v. *Soberanes*, 56 Cal.2d 466, 470 [14 Cal. Rptr. 545, 363 P.2d 593]; *Guerra* v. *Handlery Hotels, Inc.*, 53 Cal.2d 266, 271 [1 Cal.Rptr. 330, 347 P.2d 674]; *Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 446 [247 P.2d 344].) On the basis of the existence of such probabilities, *the doctrine has been applied where the defendant was responsible for construction, maintenance, or inspection of the defective premises which caused the injury.* (*Rose* v. *Melody Lane*, 39 Cal.2d 481, 485-487 [247 P.2d 335]; *Nolen* v. *F. O. Engstrum Co.*, 175 Cal. 464, 466 [166 P. 346]; *Calame* v. *Stevens*, 110 Cal.App.2d 45, 48-49 [242 P.2d 109].) " (Italics added.)

All that is necessary for the application of res ipas loquitur is that it be shown that it was probably the negligence of someone that caused the injury. Here that is clearly shown.

The court found that plaintiffs' damage was not proximately caused by any or all of the defendants. This finding was clearly erroneous. The store would not have been flooded if the roof had not been removed or had been properly replaced. Rain is not an unforeseeable event, and was, in fact, foreseen by the defendants.

Where the facts are undisputed and only one conclusion can be drawn from them, proximate cause becomes a question of law. (*Rosa* v. *Pacific Gas & Elec. Co.*, 133 Cal. App.2d 672, 674 [284 P.2d 844].) Clearly, the work on the roof, and nothing else, was the proximate cause of the flooding of the store.

The judgment is reversed.

Ford, J., and Files, J., concurred.