[Civ. No. 24034.    First Dist., Div. Two.    Sept. 24, 1968.]

ROSE M. DEL PINO, Plaintiff and Appellant, v. ANTHONY C. GUALTIERI, Defendant and Respondent.

di Leonardo, Blake, Kelly, Aguilar & Leal and Robert L. Blake for Plaintiff and Appellant.

Campbell, Custer, Warburton & Britton, and Alfred B. Britton, Jr., for Defendant and Respondent.

TAYLOR, J.—This is an appeal from a judgment of non-suit entered in appellant's action for damages for personal injuries sustained in a fall on the basement stairs of a one-family home she had leased from respondent. Appellant contends that she was entitled to amend her complaint to state an additional cause of action for breach of warranty of personalty, and that she had presented sufficient evidence of respondent's violation of the State Housing Law and county building ordinances to let the matter of liability go to the jury.

Viewing the evidence in the light most favorable to appellant, as we must on appeal from a nonsuit (*Aguirre* v. *City of Los Angeles,* 46 Cal.2d 841, 844 [299 P.2d 862]), the following facts appear. Respondent was the owner of a single family home at 14 Cecil Avenue in the City of San Jose in the unincorporated territory of the County of Santa Clara. A few days after Christmas 1962, he rented the home to appellant on a month-to-month basis.

The home consisted of three bedrooms, living room, dining room, kitchen, bath and a half, service porch and basement. The service porch behind the kitchen was connected by a Dutch door to a landing from which an interior stairway led nine steps down to the basement. The landing was about 22 x 26 inches square and was covered by a piece of linoleum which was slightly smaller than the landing. The linoleum was not attached to the landing in any way and with one finger could be moved about ½ inch. The basement stairs were 9½ inches deep and 30 inches wide. For the first three or four steps of the steep stairway, there was no railing, just a vertical wall on each side of the stairs. The handrail started about half way down to the bottom.

On March 11, 1963, after appellant had lived in the house for about 2½ months, she went to the basement stairs to get her cat. She stepped onto the landing and then as she turned to go down the basement stairs, slipped and fell. The piece of linoleum from the landing went down the stairs with her and was found at the bottom of the stairs.

Prior to the accident, appellant had used the stairs at least two or three times. On one occasion, about one month before the accident, she went down the stairs with respondent, whom she had asked to come about some water in the basement. At this time, she told him that the stairs were bad. Before the accident, appellant had never noticed the loose linoleum and thus had never complained to respondent about this matter or

any other specific details concerning the basement stairs. Other requests that she made to respondent concerning repairs were fulfilled. At the trial, appellant indicated that the steepness of the stairs had no relation to her fall which was caused by the loose linoleum and the absence of a handrail at the top of the stairs.

In March 1964, appellant filed her first amended complaint in this action, alleging that respondent had so carelessly and negligently owned and maintained the stairs and landing that they were dangerous and contained a defective condition that should have been known to respondent.

The pretrial conference order filed October 1, 1965, indicated that the issues were respondent's negligent maintenance and failure to repair the basement stairs, as well as the size of the landing, steepness of the stairs and absence of a handrail, in violation of the Uniform Building Code, recently adopted by the county. Three days before trial, the pretrial conference order was amended to reflect appellant's additional contention of liability based on respondent's alleged breach of an implied warranty of fitness for a particular use.

On the first day of trial, the trial court denied appellant's motion to further amend the pretrial conference order to include a cause of action for breach of implied warranty of fitness of personalty (i.e., the linoleum). ■ Appellant first contends that the denial of her motion on grounds of the statute of limitations was error. Citing *Landis* v. *Superior Court*, 232 Cal.App.2d 548 [42 Cal.Rptr. 893], she argues that the cause of action for breach of warranty of personalty arose out of the same general set of facts, did not change the basic cause of action and merely added an additional theory of recovery that related back to the original complaint.

We agree with this contention but it does not lead to the result urged by appellant. The record indicates that while the statute of limitations was one of the grounds for the trial court's ruling, it was not the only ground. The cause of action for breach of implied warranty of fitness of personalty could relate only to the unattached piece of linoleum on the landing above the basement stairs. Appellant neither alleged nor proved any particular defect or condition in the linoleum that could have been the proximate cause of the accident. Rather, her entire theory was that she slipped because the linoleum was not properly attached, which is a matter of negligent maintenance and thus identical to her first cause of action. Furthermore, as the landing and basement stairs are clearly a part of the real property, the purported cause of

action for breach of an implied warranty of personalty finds no support of any kind in the allegations or the evidence. Accordingly, appellant's amendment was properly denied for failure to state a cause of action for breach of implied warranty of personalty.

We also note that rules 215 and 216 of the California Rules of Court indicate that an amendment for correction of the pretrial order should be filed within five days after service thereof. Even assuming that appellant had set forth a valid cause of action, the allowance or disallowance of amendments to the pleadings during the course of trial rests largely in the discretion of the trial court and its rulings will not be disturbed unless an abuse of discretion clearly appears. The trial court has wide discretion in such matters where the purpose of the amendment is to raise new issues after the pleadings have been settled and the trial has commenced (*Feykert* v. *Hardy,* 213 Cal.App.2d 67 [28 Cal.Rptr. 510]).

The same principles that govern the exercise of a court's discretion in allowing amendments to the pleadings under section 473 of the Code of Civil Procedure apply with respect to motions to modify or amend pretrial orders (*Universal Underwriters Ins. Co.* v. *Superior Court,* 250 Cal.App.2d 722, 727 [58 Cal.Rptr. 870]). In the instant case, no abuse of discretion appears either in the denial of appellant's belated motion to amend the pretrial order or her motion to amend the pleadings, as no facts relating to an implied warranty of personalty were alleged.

Appellant next argues that the trial court erred in granting the nonsuit as the small size of the landing and absence of a full railing, in violation of the applicable State Housing Law and county building ordinances, established an independent cause of action based on respondent's violation of statutory duties. As more fully discussed below, we think the trial court correctly concluded that, as a matter of law, neither the State Housing Law nor the county building code applied to the basement staircase here involved.

So far as here pertinent, the State Housing Law, sections 17910 et seq. of the Health and Safety Code, enacted in 1961 (Stats. 1961, ch. 1844)[1] provided for the creation of a Division of Housing to adopt the rules and regulations for the

---

[1]The statute expressly provided that the provisions of the prior housing law (§§ 15000-17902, Health & Saf. Code) and all of the prior rules and regulations existing thereunder were to be continued in effect until repealed or changed pursuant to the new statute (Health & Saf. Code, § 17910, and § 17913, added by Stats. 1965, ch. 152, § 3).

protection of the public health, safety and general welfare of the occupant and public governing all aspects of the construction and maintenance of a variety of structures, including dwellings.[2] (Health & Saf. Code, § 17921, as added by Stats. 1961, ch. 1844, § 8).

The State Housing Law and the regulations were expressly made applicable "in all parts of the state" (Health & Saf. Code, § 17950). (Cal. Admin. Code, tit. 8, art. 7, § 16650.)[3] In issuing its regulations, the administrative agency issued two kinds of regulations: those applicable only to buildings and structures as to which construction commenced after the effective date of the regulation and those relating to use, maintenance and change of occupancy which were made retroactive to apply to all structures approved for construction or constructed before or after the effective date of such regulations (see Cal.Admin. Code, tit. 8, art. 7, § 16650, Register No. 63, No. 12, 7-13-63).[4] In 1965, this administrative classification of regulations was made a part of the State Housing Law by the addition of section 17912, set forth below.[5] To clarify the distinction between retroactive and prospective regulations, all retroactive regulations were designated by an asterisk.

■ The regulation on which appellant here relies, California Administrative Code, title 8, article 7, section 16792.6, set forth in the footnote below[6] (adopted Register 61, No. 26,

---

[2]The regulations issued pursuant to the new law defined a "dwelling" in substantially the same language as the regulations under the old law, so far as here relevant, as "any structure . . . containing one or more . . . guest rooms." (Cal. Admin. Code, tit. 8, art. 7, § 16606.) This very language was held to include a single family residence occupied by its owner in *Baird* v. *Bradley*, 109 Cal.App.2d 865 [240 P.2d 1016]. Accordingly, the applicability of the State Housing Law and the regulations issued thereunder to the premises here leased by appellant is not in question.

[3]Section 16650 as it read at the time here applicable (Register No. 61, No. 26, 12-30-61) merely set forth this state-wide applicability.

[4]This version, not promulgated until after the accident here in question, is the one cited by respondent on page 13 of his brief.

[5]"Rules and regulations promulgated pursuant to the provisions of this part, relating to the erection or construction of buildings or structures, shall not apply to existing buildings or structures or to buildings or structures as to which construction is commenced or approved prior to the effective date of the rules or regulations, except by act of the Legislature, but regulations relating to use, maintenance and change of occupancy shall apply to all buildings and structures approved for construction or constructed before or after the effective date of such rules and regulations." (Added by Stats. 1965, ch. 152, § 2.)

[6]"Every stairway shall have at least one handrail. If a stairway is 44 inches or more in width, it shall have one handrail on each side.

"When the width of a stairway exceeds 88 inches, there shall be provided intermediate handrails continuous between landings and dividing the stairway into portions not more than 66 inches in width."

12-30-61, subsequently readopted in identical form, Register No. 63, No. 12, 7-13-63) was never so marked with an asterisk to indicate a retroactive effect. Appellant, however, argues that the regulation was intended to so apply to the maintenance of respondent's basement stairway. We cannot agree.

Although administrative practices and construction of regulations are not binding on this court (*Marble Mortg. Co. v. Franchise Tax Board,* 241 Cal.App.2d 26, 45 [50 Cal.Rptr. 345]), we think the approach here adopted by the administrative agency was inherently reasonable. The retroactive interpretation urged by appellant would no doubt create undue burdens on the owners of all buildings already in existence at the time the regulations were issued. Furthermore, appellant has not been able to point to any provisions indicating that the Legislature intended the State Housing Law to have such complete retrospective application.

Also, contrary to appellant's contention, nothing in the language of regulation 16792.6 (or of the other regulations surrounding it) points to any other possible interpretation except a prospective one for new construction. We note that the very few regulations, specifically made retroactive, relate to major safety factors. For example, the maintenance and repair of fire escapes in apartment houses and hotels (§ 16807), approved gas appliances (§ 16818), and water heaters (§ 16818.8.).

We conclude that the court below properly found that as a matter of law, regulation 16792.6, issued pursuant to the State Housing Law, did not apply and appellant could not predicate a cause of action on respondent's failure to conform to the regulation concerning handrails.

We turn, therefore, to the applicable provisions of the Uniform Building Code, the 1961 version of which was in effect at the time of the accident here in question. Appellant relies on sections 104(g), 203(a), and 3305(g) of the Uniform Building Code. Viewing these provisions in their proper context, it appears that section 104(g), set forth so far as pertinent below,[7] is a part of chapter 1 which generally sets forth the title and scope of the building code. The organization and enforcement procedures for "all of the provisions" of this

---

[7] "(g) Existing Occupancy. Buildings in existence at the time of the passage of this Code may have their existing use or occupancy continued, if such use or occupancy was legal at the time of the passage of this Code, provided such continued use is not dangerous to life."

code are set forth in chapter 2 (§ 202 (a)), and for the purpose of such enforcement, the building official is given the powers of a police officer. A violation of any provision of the code is a misdemeanor (§ 205). Section 203, besides declaring all unsafe buildings to be public nuisances (§ 203(a)), sets forth the procedures whereby unsafe buildings are to be abated. Accordingly, subdivisions (b), (c) and (e) provide for elaborate notice to the owner as well as service of such notice and posting of signs on all buildings that have been examined and have been found to be unsafe in relation to existing use because of their inadequate maintenance, dilapidation, obsolescence, etc. █ As there was no evidence here that the home owned by respondent had ever been inspected and found to be unsafe or a public nuisance, pursuant to the procedures required, it is readily apparent that appellant cannot rely on violations by respondent of any portion of sections 104 or 203.

█ As to section 3305(g) of the Uniform Building Code, set forth so far as pertinent in the footnote below,[8] appellant's contentions are even weaker. Apart from containing expressly permissive language, section 3305(g) is a part of chapter 33, relating to stairs, exits and occupant loads, the purpose of which is to ''provide minimum standards of egress facilities for occupants of buildings'' (§ 3301(a)). There was here no evidence that the completely enclosed interior basement stairway was an egress facility.

Accordingly, we hold that the trial court properly concluded, as a matter of law, that appellant could not predicate a cause of action on respondent's alleged violation of the county building code.

In view of our above conclusions, we need not discuss appellant's remaining contentions in detail. We note that authorities such as *Hardin* v. *Elvitsky*, 232 Cal.App.2d 357 [42 Cal. Rptr. 748], are not in point. The *Hardin* case involved a common stairway, and certain industrial safety orders that were applicable if the particular tenant, visited by the invitee who brought the action, was also determined to be an employee of the landlord.

█ Under common law, the general rule is that there is no liability from the landlord either to a tenant or others for the defective condition of the demised premises whether existing

---

[8] ''Handrails . . . Exceptions: 1. Stairways forty-two inches (42″) or less in width and stairways serving Group I Occupancies *may have one* handrail.'' (Italics added.)

at the time of the lease or developing thereafter. This rule applies in California in the absence of: (1) concealment of a known danger, (2) an express covenant to repair or a promise to repair supported by consideration, or (3) a statutory duty to repair (*Gustin* v. *Williams,* 255 Cal.App.2d Supp. 929, 931-932 [62 Cal.Rptr. 838]). The first two exceptions have no application to the instant case as it is undisputed that neither appellant nor respondent had any knowledge of the loose linoleum until the accident, and there was no contention that respondent agreed to do anything about the basement steps. The only cause of action available to appellant here would have been under the third exception relating to a statutory duty. While we recognize that there is a growing tendency to broaden the statutory exception to the general rule of nonliability (see, for example, *Grant* v. *Hipsher,* 257 Cal.App.2d 375 [64 Cal.Rptr. 892]; *Halliday* v. *Greene,* 244 Cal.App.2d 482 [53 Cal.Rptr. 267]), appellant here has failed to establish the existence of any statutory violation on the part of respondent-landlord.

The judgment of nonsuit is affirmed. The purported appeal from unspecified orders is dismissed.

Shoemaker, P. J., and Agee, J., concurred.