[Civ. No. 33680. First Dist., Div. One. Mar. 1, 1976.]

LILY GOLDEN, Plaintiff, Cross-defendant and Appellant, v.
M. T. CONWAY, Defendant, Cross-complainant and Appellant.

**COUNSEL**

Thornton, Taylor & Downs and R. Richard Audley for Plaintiff, Cross-defendant and Appellant.

Carroll, Burdick & McDonough and John W. Mays for Defendant, Cross-complainant and Appellant.

**OPINION**

**SIMS, Acting P. J.**—Plaintiff and cross-defendant Golden, a landlord, and defendant and cross-complainant Conway, her tenant, have each appealed from a judgment denying any relief to either in an action in which the landlord sought to recover the damages to her premises, and the tenant sought to recover the damages to his personal property from a fire which occurred on March 27, 1967, that apparently started in, by, or near a wall heater on the premises. The judgment was entered on verdicts against each claimant which were directed by the court on its own motion with the acquiescence of plaintiff-landlord. The tenant filed a timely motion to set aside and vacate the judgment and for judgment in his favor, and a motion for new trial. The landlord countered with a protective motion for new trial to be granted her in the event the court

ruled favorably on the tenant's motion. All these motions were denied, the tenant appealed, and the landlord followed with her appeal from the judgment entered against her.

The action was brought by the landlord in municipal court to recover some $2,900 in damages for injury to her real property. In her first cause of action she sought recovery against a named contractor who had installed a wall panel heater in the premises and the designers, manufacturers, assemblers and sellers of the heater, named as fictitious defendants. She alleged that the wall panel heater was unsafe for its intended use by reason of a defect in its design, manufacture and assembly which allowed it to malfunction and catch on fire. No such defendants were served or made party to the action. The landlord's second cause of action alleged negligence in the design, manufacture, assembly, sale, delivery, installation, inspection and servicing of the wall panel heater by the named contractor and the fictitious defendants, and negligence in the activities and operations conducted on the premises by the tenant, which proximately caused the fire and damage. The named contractor was never served, and was never made a party to the proceedings.

The case was transferred to the superior court when the tenant filed an answer, counterclaim and cross-complaint in which he sought some $9,000 for loss of inventory and denied any responsibility for the fire. He sought recovery against plaintiff for her negligence in maintaining a known dangerous condition and failing to notify the tenant of the danger, for her failure to comply with a statutory duty to maintain the wall panel heater in good repair. He also sought recovery against the contractor and other fictitious defendants on the theory of strict liability, but never effected service on anyone but plaintiff.

At the trial it was the landlord's contention that the tenant, or his employee who was living on the premises, left combustible materials too close to the heater so that they became overheated, ignited and started the fire. Her case was supported by the testimony of the plaintiff that there were remnants of burnt clothes near a hole which had burned through the floor in front of the heater, and the testimony of a fire insurance adjuster, a consulting fire investigator, and a heating company proprietor which indicated that the fire must have started from combustible material which was placed too close to the heater, and not from any malfunction of the heater.

The tenant conceded that the landlord was not directly responsible for the fire. He contended that the fire was caused by a defect in the heater installed by the contractor a year or two before the fire. He sought recovery on the following theories: (1) that the contractor was acting as an employee of the landlord; (2) that if the contractor was acting as an independent contractor, the landlord, as his principal, was liable in any event because (a) she was negligent in hiring him because he was an unlicensed contractor, and (b) the duties he performed were not delegable; and (3) that the landlord was strictly liable in tort. In support of the tenant's case the tenant and two of his employees, one of whom was residing on the premises the night of the fire, testified that there was no combustible material near the wall panel heater. A consulting engineer testified that the gas wall heater was installed in violation of certain building code provisions requiring adequate ventilation and flues. According to the engineer the heater could not get sufficient oxygen, soot formed as a result of improper combustion, and the soot, dislodged and heated by the heater, rolled out onto the floor and like charcoal burned through the floor in front of the heater. Further evidence is discussed below as pertinent.

After both sides rested, the court, in chambers, reviewed the proposed instructions with counsel for each party. The court questioned whether the tenant had shown any negligence on the part of the landlord for the acts of the contractor, and indicated it was not prepared to give an instruction on strict liability, and was not prepared to hold the landlord for any code violation because of insufficient air supply or venting of the heater. The following morning, without the benefit of a motion from either party, the court indicated it was considering directing a verdict against the claim of the landlord because the record was devoid of "any facts pointing to the negligence of Defendant [tenant]" and against the claim of the tenant "because of the Court's feeling that vicarious liability on this factual basis should not be and could not be found . . . ."[1]

---

[1] In commenting upon the evidence the court stated, " . . . I am not entirely satisfied with the testimony of both of the so-called experts within this particular field with which we are dealing; one being a specialist in fire investigation and the other a consulting engineer. [¶] Through his testimony put into the record, in his opinion violations of the Building Code and the Plumbing Code were as it might have been better for the disposition of the case if we heard from some of the senior city inspectors or other building contractors."

The court acknowledged that it was impressed with hearsay evidence, thereafter stricken, which indicated that the repaired heater had been "passed by Plumbing Inspector," because "it tends to support the other contractor's testimony that the city inspectors don't pay any attention to this particular problem. That is the provision of fresh air sources." From the foregoing it is difficult to ascertain whether the court was

■ "A nonsuit or a directed verdict may be granted 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' (*Newson* v. *Hawley,* 205 Cal. 188 [270 P. 364] other citations omitted.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. [Citation.] . . . In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict." (*Estate of Lances* (1932) 216 Cal. 397, 400-401 [14 P.2d 768]. Accord: *Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 745 [87 Cal.Rptr. 376, 470 P.2d 360]; and *McNeal* v. *Greenberg* (1953) 40 Cal.2d 740, 743 [255 P.2d 810].)[2]

I

■ Since the landlord deferred to the court's announced intention, and because the parties have stipulated that the tenant should be deemed the appellant, and open and close, we first address ourselves to his contentions.

### Negligence

"Under common law, the general rule is that there is no liability from the landlord either to a tenant or others for the defective condition of the demised premises whether existing at the time of the lease or developing thereafter. This rule applies in California in the absence of: (1)

concerned about the sufficiency of the evidence, or the existence of any evidence upon which to predicate a claim.

[2]See also *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 509 [118 Cal.Rptr. 741]; *Minoletti* v. *Sabini* (1972) 27 Cal.App.3d 321, 324-325 [103 Cal.Rptr. 528]; *Zambrana* v. *Standard Oil Co.* (1972) 26 Cal.App.3d 209, 213 [102 Cal.Rptr. 699]. Cf. *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 787 [285 P.2d 902]; and *Del Pino* v. *Gualtieri* (1968) 265 Cal.App.2d 912, 913 [71 Cal.Rptr. 716].

concealment of a known danger, (2) an express covenant to repair or a promise to repair supported by consideration, or (3) a statutory duty to repair. [Citation.]" (*Del Pino* v. *Gualtieri* (1968) 265 Cal.App.2d 912, 919-920 [71 Cal.Rptr. 716]. See also *Fakhoury* v. *Magner* (1972) 25 Cal.App.3d 58, 63 [101 Cal.Rptr. 473]; and Rest.2d Torts, § 356. Cf. *Brennan* v. *Cockrell Investments, Inc.* (1973) 35 Cal.App.3d 796, 799-801 [111 Cal.Rptr. 122].) In the case last cited the court disapproved the foregoing doctrine as incorporated in BAJI No. 8.40 (Landlord's Liability for Accident on Leased Premises). The court reviewed *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], in which it was determined that the liability of a possessor of land was to be governed by the provisions of section 1714 of the Civil Code,[3] and that no public policy required that an exception be carved out of the statute for tenants in possession when they were sued by their guests. The decision examined the policy involved in the rule referred to above in the light of the rationale of *Rowland* v. *Christian,* noted existing precedents on the subject in this state (rejecting *Del Pino* v. *Gualtieri, supra,* and noting that the remarks in *Fakhoury* v. *Magner, supra,* on the subject of defective premises were dicta), and observed the trend in other states. It concluded: "In light of the foregoing discussion, it is apparent that the trial court was incorrect in employing instructions based on the superseded common law rules instead of on section 1714 of the Civil Code. This was reversible error inasmuch as the plaintiff was entitled to have the jury instructed on every theory of the case that was supported by the evidence, including negligence. [Citation.]" (35 Cal.App.3d at p. 802. See also *Uccello* v. *Laudenslayer* (1975) 44 Cal.App.3d 504, 510-513 [118 Cal.Rptr. 741]; *Minoletti* v. *Sabini* (1972) 27 Cal.App.3d 321, 324 [103 Cal.Rptr. 528]; and *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co.* (1970) 4 Cal.App.3d 129, 135-136 [84 Cal.Rptr. 449].)

The duty is referred to as follows: ". . . a landlord must act toward his tenant as a reasonable person under all of the circumstances, including the likelihood of injury, the probable seriousness of such injury, the burden of reducing or avoiding the risk, and his degree of control over the risk-creating defect, . . ." (*Brennan* v. *Cockrell Investments, Inc., supra,* 35 Cal.App.3d at pp. 800-801.)

---

[3]Civil Code section 1714 provides: "Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The extent of liability in such cases is defined by the title on compensatory relief."

With these precepts in mind we can address the facts and principles on which the tenant would establish the landlord's liability for negligence. In 1965 or 1966 plaintiff admittedly contracted with one William Buckley to do certain remodeling work on the premises. He was engaged to eliminate some dry rot, replace some flooring and do some painting in the building in which the premises, the subject of this action, were located. The building was one of a complex of four buildings, housing six residential and two commercial tenants. Buckley also undertook to furnish and install wall heaters in the premises in question and the appurtenant flats on the second and third floor, and, as well, four heaters in a building in the rear. The landlord testified that she engaged Buckley on the recommendation of "a realtor lady" for whom he had done work, that he represented he was a licensed general contractor and was qualified and competent. According to her he obtained permits for everything he did and all the work was inspected, but cross-examination revealed that she relied on what the contractor told her in connection with the permit to start construction. She had no copy of her contract as she threw everything away after the work was finished.

It was stipulated that at the time the work was performed, Buckley was not licensed as a general contractor; that he did secure a general building permit for the general work of renovation; and that because the records of the department were destroyed it was impossible to determine whether he secured the requisite plumbing permits and inspection. The tenant also introduced evidence to show that the installation of the panel wall heater in the premises where the fire started was improper because it violated provisions of certain ordinances, because it was improperly vented in combination with other appliances, and because there was inadequate ventilation in the room in which it was installed. It would appear that there was sufficient evidence to demonstrate that the heater was negligently installed, and that an action would lie against the contractor for the damage proximately resulting therefrom. (See *Dow* v. *Holly Manufacturing Co.* (1958) 49 Cal.2d 720, 725-728 [321 P.2d 736]; and *Knell* v. *Morris* (1952) 39 Cal.2d 450, 453-455 [247 P.2d 352].)

The tenant contends that he is entitled to have the jury consider whether the landlord was negligent in selecting a contractor. ■ In general the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. (See 2 Rest.2d Torts, § 409; *Williams* v. *Fairhaven Cemetery Assn.* (1959) 52 Cal.2d 135, 139 [338 P.2d 392]; *McDonald* v. *Shell Oil Co.* (1955) 44 Cal.2d 785, 788-789 [285 P.2d 902]; and *Bedford* v.

*Bechtel Corp.* (1959) 172 Cal.App.2d 401, 407 [342 P.2d 495] [overruled on other grounds *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407 (20 Cal.Rptr. 12, 369 P.2d 708)].) On the other hand it has been observed, ". . . the general rule is subject to exceptions of such magnitude that they leave only a small area in which the common rule operates. [Citations.] In fact, the exceptions have almost emasculated the general rule. [Citation.] [¶] The first group of exceptions covers situations in which the employer himself [usually a landowner or general contractor] is negligent or otherwise at fault: (1) Where he negligently employs an incompetent contractor or subcontractor; . . ." (*Widman* v. *Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 743 [97 Cal.Rptr. 52]. See also 2 Rest.2d Torts, § 411; *Risley* v. *Lenwell* (1954) 129 Cal.App.2d 608, 622-623 [277 P.2d 897]; and *Skelton* v. *Fekete* (1953) 120 Cal.App.2d 401, 415 [261 P.2d 339].) Comment (c) of the Restatement notes, "The amount of care which should be exercised in selecting an independent contractor is that which a reasonable man would exercise under the circumstances, and therefore varies as the circumstances vary. [¶] Certain factors are important: (1) the danger to which others will be exposed if the contractor's work is not properly done; (2) the character of the work to be done—whether the work lies within the competence of the average man or is work which can be properly done only by persons possessing special skill and training; and (3) the existence of a relation between the parties which imposes upon the one a peculiar duty of protecting the other." Here on the one hand the landlord's testimony makes out a prima facie case of proceeding in a reasonable manner. She, however, was impeached by contradiction, if believed, on other points. The mere fact of nonlicensing might not be evidence of lack of skill, but when buttressed by evidence of an improper installation it may justify the inference that the work was left to a marginal operator in order to cut costs. We cannot say in view of the dangers inherent in the installation of gas fixtures that a factual question was not presented.[4]

---

[4]The Restatement comment recites: "As to the second factor, one who employes a carpenter to repair the ceilings of his shop or to install plumbing in his hotel is entitled to assume that a carpenter or plumber of good reputation is competent to do such work safely. In such case, there is no duty to make an elaborate investigation as to the competence of the carpenter or plumber. Indeed, there is no duty to take any great pains to ascertain whether his reputation is or is not good. The fact that he is a carpenter or plumber is sufficient, unless the employer knows that the contractor's reputation is bad or knows of facts which should lead him to realize that the contractor is not competent. On the other hand, if the work is such as will be highly dangerous unless properly done and is of a sort which requires peculiar competence and skill for its successful accomplishment, one who employs a contractor to do such work may well be required to go to considerable pains to investigate the reputation of the contractor and, if the work is peculiarly dangerous unless carefully done, to go further and ascertain the contractor's actual competence. [¶] The extent of the employer's knowledge and experience in the

■ The tenant correctly points out that the possessor of land is answerable for the negligent failure of an independent contractor to put or maintain buildings and structures thereon in reasonably safe condition. (*Knell* v. *Morris, supra,* 39 Cal.2d 450, 456; *Brown* v. *George Pepperdine Foundation* (1943) 23 Cal.2d 256, 259 [143 P.2d 929]; *Pappas* v. *Carson* (1975) 50 Cal.App.3d 261, 268 [123 Cal.Rptr. 343]; *O'Gan* v. *King City Joint Union High School Dist.* (1970) 3 Cal.App.3d 641, 646-647 [83 Cal.Rptr. 795]; *Poulsen* v. *Charlton* (1964) 224 Cal.App.2d 262, 268 [36 Cal.Rptr. 347]; 2 Rest.2d Torts, § 422. See also *Maloney* v. *Rath* (1968) 69 Cal.2d 442, 447 [71 Cal.Rptr. 897, 445 P.2d 513, 40 A.L.R.3d 1]; and *Dow* v. *Holly Manufacturing Co., supra,* 49 Cal.2d 720, 725.)[5] In the foregoing cases the party to be charged was in possession and control of the defective portion of the premises at the time of the injury. In *Knell* v. *Morris,* the defendant MacMar, Inc., who was held for the negligence of the plumber, was the occupant of the floor above the damaged premises, as well as the owner of the heater (39 Cal.2d at p. 453). *Brown* v. *George Pepperdine Foundation* involved elevators under the control of the landlord (23 Cal.2d at p. 259; and see 2 Rest.2d Torts, § 360); *O'Gan,* a sink in a washroom controlled by the school (3 Cal.App.3d at p. 646); and *Poulsen* v. *Charlton,* the roof over which the landlord had dominion (224 Cal.App.2d at p. 268; and see 2 Rest.2d Torts, § 361). *Pappas* v. *Carson,* teaches that where the tenant installs and has control over the electrical outlets he will be liable for damages caused to the landlord and others by the malfunctioning of that installation (50 Cal.App.3d 261, 268-269).

The landlord contends that when the premises are turned over to another he is absolved of all responsibility. He relies upon *Williams* v. *Fairhaven Cemetery Assn., supra,* 52 Cal.2d 135. There, however, the court stated, "All the evidence is that [the gas water heaters] were in good repair and that the explosion occurred as the result of [the maintenance man's] closing the valves and confining water in heaters subject to heat from burners." (52 Cal.2d at p. 139. See also *Goodman* v. *Harris* (1953) 40

---

field of the work to be done is to be taken into account; and an inexperienced widow employing a contractor to build a house is not to be expected to have the same information concerning the competence and carefulness of building contractors in the community, or to exercise the same judgment, as would a bank seeking to build the same house."

[5]Cases which deal with the nondelegable liability for injury and damage arising from dangers involved during the performance of the work by the contractor, are not particularly applicable here where the finished product is involved. (See 2 Rest.2d Torts, §§ 413 and 416; *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 253 [66 Cal.Rptr. 20, 437 P.2d 508]; *Courtell* v. *McEachen* (1959) 51 Cal.2d 448, 456-457 [334 P.2d 870]; and *Fonseca* v. *County of Orange* (1972) 28 Cal.App.3d 361, 365 [104 Cal.Rptr. 566].)

Cal.2d 254, 265 [253 P.2d 447].) In the case last cited the court distinguished *Knell* v. *Morris, supra,* on the grounds that the heater involved was not a fixture as was suggested in the earlier case (40 Cal.2d at pp. 261-262). The court did recognize the principle relied upon by the tenant here when it stated, "The rule that a lessor must make his property safe for the purposes for which it is to be used cannot be extended to require him to insure against defects in, or negligent operation of, the property of another which may be brought upon his premises for the conduct of the business." (40 Cal.2d at p. 265. See also *Schwartz* v. *McGraw-Edison Co.* (1971) 14 Cal.App.3d 767, 781-783 [92 Cal.Rptr. 776].)

The landlord urges that to impose the duty on the landlord to oversee all labor performed on her premises, to inspect every device imported for use on the premises, and to impose nondelegable duties on her to comply with all statutory safety provisions would be an onerous duty to place on one who does not control the work. (See *Bedford* v. *Bechtel Corp., supra,* 172 Cal.App.2d 401, 411.) This argument fails to distinguish between hazards which arise by reason of performance of the work (cf. fn. 5 above), and hazards which are incorporated into the finished work. The criteria used to determine when the owner should be responsible indicate that the owner should be responsible for the defects. "There are numerous considerations which have led courts to depart from the rule of nonliability of a private employer for the torts of an independent contractor. Some of the principal ones are that the enterprise, notwithstanding the employment of the independent contractor, remains the employer's because he is the party primarily to be benefited by it, that he selects the contractor, is free to insist upon one who is financially responsible, and to demand indemnity from him, that the insurance necessary to distribute the risk is properly a cost of the employer's business, and that the performance of the duty of care is of great importance to the public. [Citations.]" (*Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 253 [66 Cal.Rptr. 20, 437 P.2d 508].)

If there is to be any immunity for the negligence of the contractor it must depend on superseded immunities found in the law of landlord and tenant, which, as we have seen, were repudiated in *Brennan* v. *Cockrell Investments, Inc., supra,* 35 Cal.App.3d 796, 801-802. ■ The tenant was entitled to have the jury determine whether the heater was negligently installed as indicated by the testimony of the tenant's engineer. If it was, and that negligence was the proximate cause of the fire and destruction of the tenant's goods, the landlord should be vicariously liable for the negligence of the contractor.

The foregoing is predicated upon the proposition that it was negligent to install a gas wall panel heater in a manner and place that would not permit it to secure sufficient oxygen for proper combustion, thereby permitting the accumulation of soot, and results as testified to by tenant's engineer.

The witness also indicated that installation in the premises with painted-up windows, was in violation of local building or plumbing codes in force at the time. Although there is some question as to the applicability of those provisions it should have been resolved, and the record, as it appears, indicates that provisions concerning air available for intake may have been violated. It is clear that the violation of statutory duty cannot be avoided because it was delegated. (See *Snyder* v. *Southern Cal. Edison Co.* (1955) 44 Cal.2d 793, 801 [285 P.2d 912]; and 2 Rest.2d Torts, § 424. Cf. *Del Pino* v. *Gualtieri, supra,* 265 Cal.App.2d 912, 916-919; and note *Beard* v. *Atchison, Topeka & Santa Fe Ry. Co., supra,* 4 Cal.App.3d 129, 142.)

## Strict Liability

In *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049], the court promulgated the following rule, "A manufacturer is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect that causes injury to a human being." (59 Cal.2d at p. 62.) "The purpose of such liability is to insure that the costs of injuries resulting from defective products are borne by the manufacturers that put such products on the market rather than by the injured persons who are powerless to protect themselves." (*Id.,* p. 63.) "During the following decade the *Greenman* rule has been made applicable to retailers (*Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 263 . . .; bailors and lessors (*Price* v. *Shell Oil Company* (1970) 2 Cal.3d 245, 248 . . .; wholesalers and distributors (*Barth* v. *B. F. Goodrich Tire Co., supra,* 265 Cal.App.2d 228, 252-253 [71 Cal.Rptr. 306]; *Canifax* v. *Hercules Powder Co.* (1965) 237 Cal.App.2d 44, 52 . . .; and sellers of mass-produced homes (*Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224, 227 . . . )." (*Cronin* v. *J. B. E. Olson Corp.* (1972) 8 Cal.3d 121, 130 [104 Cal.Rptr. 433, 501 P.2d 1153]. See also *Stuart* v. *Crestview Mut. Water Co.* (1973) 34 Cal.App.3d 802, 810 [110 Cal.Rptr. 543] [developer who installed defective water system]; *Fakhoury* v. *Magner, supra,* 25 Cal.App.3d 58, 62-64 [lessor of furniture]; *Garcia* v. *Halsett* (1970) 3 Cal.App.3d 319, 324-326 [82 Cal.Rptr. 420] [licensor of

defective washing machine]; *McClaflin* v. *Bayshore Equipment Rental Co.* (1969) 274 Cal.App.2d 446, 450-453 [79 Cal.Rptr. 337] [lessor of defective ladder]; and *Avner* v. *Longridge Estates* (1969) 272 Cal.App.2d 607, 609-615 [77 Cal.Rptr. 633] [manufacturer of an unstable building lot].)

In *Fakhoury* v. *Magner, supra,* the court purported to distinguish between defective fixtures and defective furniture. So if the tenant or the occupant is injured because the sofa collapses, the landlord is liable, equally so if either is injured by the coin washing machine which the landlord has in the basement for the convenience of the tenants. (See *Garcia* v. *Halsett, supra.*) On the other hand, if one is damaged by the collapse of a wall bed he cannot recover. (See *Lee* v. *Giosso* (1965) 237 Cal.App.2d 246, 248 [46 Cal.Rptr. 803].) The discrepancy calls for further analysis.

In *Fakhoury* v. *Magner, supra,* the court followed the following rationale, "We do not hold that under every possible set of circumstances the doctrine of strict liability will apply. As in the case of personal property which is leased, where no contemporaneous lease of real property is involved, there are limitations. The property must have been placed in the stream of commerce; a casual or isolated transaction will not bring the doctrine into play. In the case at hand, the landlord furnished two apartments in San Francisco and three in Sacramento at the same time with the same kind of couch purchased from the same seller. Moreover, the item was a substantial one, not an incidental bit of furniture which might be unlikely to produce any kind of injury. Again, the item was relatively new, subject to recent inspection and readily traceable to the seller. Altogether, the transaction of renting furniture was substantially a commercial one. These conditions present, the reasons set forth in the *McClaflin* and *Price* cases are applicable here: the injured persons are virtually powerless to protect themselves; the lessor can recover the cost of protection by charging for it in his business; and he has a better opportunity than does the injured person of recouping from anyone primarily responsible for the defect." (25 Cal.App.3d at p. 64. See also second paragraph of com. (a), following § 356, 2 Rest.2d Torts, pp. 240-241.)

In this case we see no reason to distinguish between appliances which are attached to the realty, and appliances or furniture which are not. ■ We conclude that a lessor of real property who, as the landlord in this case, is engaged in the business of leasing apartments

and appurtenant commercial premises, equips the premises with an appliance without knowing whether or not it is defective because of the manner in which it was manufactured or installed, and it proves to have defects which cause injury to persons or property when used in a normal manner, is strictly liable in tort.

There is evidence in this case that the premises in question "were intended for the occupation of human beings" (see Civ. Code, § 1941). They were admittedly designed for that purpose with kitchen, bath and extra room. The landlord knew that the tenant had permitted an employee to reside at his former store, and that he was continuing the practice in her premises. Nevertheless, we have not rested our decision on that point because there may be sufficient evidence to argue that the jury should find that such use was without the permission of the landlord, and that the premises were leased solely for commercial purposes.

It is worth noting, however, that among the requirements which the Legislature has since prescribed for premises used for the occupation of human beings are, "Heating facilities which conformed with applicable law at the time of installation, maintained in good working order." (Civ. Code, § 1941.1, subd. (d).) In *Green v. Superior Court* (1974) 10 Cal.3d 616 [111 Cal.Rptr. 704, 517 P.2d 1168], the court noted the transition from agrarian lessor-lessee transactions, under which the old law developed, to modern urban landlord-tenant relationships, the tendency to treat leases as contracts rather than conveyances, the complexity of discovery of defects in and making repairs to modern structures, the absence of a free market, the developments in the law governing the obligations of the sellers of goods (as have been noted above), the expectancy of the tenant, the development of state standards, and the development of the law in other jurisdictions. It concluded, "For the reasons discussed at length above, we believe that the traditional common law rule has outlived its usefulness; we agree with the . . . determination that modern conditions compel the recognition of a common law implied warranty of habitability in residential leases." (10 Cal.3d at p. 629.) The philosophy behind that holding is compelling if the premises are treated as adapted for and actually used as a dwelling, and persuasive if they are considered as merely a small commercial outlet.

The landlord urges that strict liability cannot apply to her because if the defect was in the combination of the heater and the manner and

place in which it was installed, she should not be liable in the absence of actual knowledge that there was insufficient air to permit the heater to function properly. (See *Ruiz* v. *Minnesota Mining & Mfg. Co.* (1971) 15 Cal.App.3d 462, 469-470 [93 Cal.Rptr. 270].) In that case it was the product which was defective, and the property owner merely failed to take corrective action because he did not discover the defect. Here the faulty installation created the dangerous situation and the landlord, through her contractor, was party to that, if the tenant's engineer can be believed. The defense asserted by the manufacturer in *Zambrana* v. *Standard Oil Co.* (1972) 26 Cal.App.3d 209 [102 Cal.Rptr. 699], is not available to the landlord. There the manufacturer's valve stem was incorporated in a new tire mounted by the vendor of the tire, there was nothing defective about it. In that case the defect, if any, resulted, according to circumstantial evidence rejected by the court in granting a new trial, from improprieties in the installation of the tire by the seller who furnished the complete product. There, as here, there was sufficient evidence to sustain a finding against the supplier, and a judgment notwithstanding the verdict was reversed.

The trial court erred in failing to submit to the jury the questions of whether the tenant's evidence established the liability of the landlord on the two theories proposed by him.

## II

Although the landlord acquiesced in the granting of a directed verdict against her claim for damages, her consent was conditional. She has preserved her right to attack that ruling if the directed verdict in her favor is set aside. It is clear that if the testimony presented on her behalf is believed, that she was entitled to recover from the tenant on the theory that he or one of his employees negligently left combustible material too close to the wall heater. (See Health & Saf. Code, §§ 13000 and 13001; and *Pappas* v. *Carson, supra,* 50 Cal.App.3d 261, 268-269.) It is therefore proper to set aside the judgment entered on the directed verdict against her.

In the instant case the evidence was in conflict with respect to the cause of the fire. We express no opinion on the merits of the case. Since there was sufficient evidence to sustain a verdict in favor of either the landlord or the tenant, the trial court erred in directing verdicts against each claimant.

The judgment is reversed as to each party, and it is ordered that the costs of the record on appeal be divided between the parties, and that each bear his or her remaining costs of appeal.

Elkington, J., and Lazarus, J.,* concurred.

*Retired judge of the superior court sitting under assignment of the Chairman of the Judicial Council.